UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| SACCUCCI AUTO GROUP, INC., formerly known as SACCUCCI LINCOLN-MERCURY, INC., d/b/a SACCUCCI HONDA<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HONDA MOTOR COMPANY, INC. and AMERICAN HONDA FINANCE CORPORATION d/b/a HONDA FINANCIAL SERVICES,<br><br>Defendants. | : | C.A. No. 08-121-S |

**SACCUCCI AUTO GROUP, INC'S MOTION TO COMPEL**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Saccucci Auto Group, Inc., formerly known as Saccucci Lincoln-Mercury, Inc., d/b/a Saccucci Honda ("Saccucci") hereby moves this Court to issue an order:

1) compelling American Honda Motor Company, Inc. and American Honda Finance Corporation d/b/a Honda Financial Services (collectively, "Honda") to provide documents responsive to Saccucci's Request for Production Nos. 11 and 12, or, in the alternative, to certify that no documents exist that are responsive to those requests;

2) compelling Honda to produce certain e-mails identified on its privilege log that were shared with a third party, and

3) compelling Honda to submit for *in camera* review certain documents identified on its privilege log to determine whether they contain privileged communications.

The arguments upon which this motion is based are set forth in the accompanying memorandum of law.

Dated: Providence, Rhode Island
July 16, 2008

PLAINTIFFS, SACCUCCI AUTO GROUP, INC., formerly known as SACCUCCI LINCOLN-MERCURY, INC., d/b/a/ SACCUCCI HONDA
By its attorneys,

*/s/ Adam M. Ramos*

John Tarantino, #2586
Geoffrey W. Millsom, #6483
Adam M. Ramos, #7591
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-2443
Tel: (401) 274-7200
Fax: (401) 351-4607

RULE 37 CERTIFICATION

I hereby certify that, prior to bringing this motion to compel, I conferred in good faith with the parties failing to make discovery in an unsuccessful effort to secure the information without court action.

/s/ *Adam M. Ramos*

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| SACCUCCI AUTO GROUP, INC., formerly known as SACCUCCI LINCOLN-MERCURY, INC., d/b/a SACCUCCI HONDA<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HONDA MOTOR COMPANY, INC. and AMERICAN HONDA FINANCE CORPORATION d/b/a HONDA FINANCIAL SERVICES,<br><br>Defendants. | : | C.A. No. 08-121-S |

**MEMORANDUM OF LAW IN SUPPORT OF**
**SACCUCCI AUTO GROUP, INC'S MOTION TO COMPEL**

Saccucci Auto Group, Inc., formerly known as Saccucci Lincoln-Mercury, Inc., d/b/a Saccucci Honda ("Saccucci") submits this memorandum of law in support of its Motion To Compel.

**BACKGROUND**

This litigation arises out of the decision of American Honda Motor Company, Inc. and American Honda Finance Corporation d/b/a Honda Financial Services (collectively, "Honda") to ban its dealers from selling Honda Care and Acura Care vehicle service contracts via the internet effective April 1, 2008. Saccucci originally filed its Verified Complaint in Rhode Island Superior Court on March 27, 2008. The following day, March 28, 2008, Judge Silverstein granted Saccucci's motion for a temporary restraining order prohibiting Honda from implementing its new Honda Care and Acura Care Vehicle

Service Contract Internet Policy & Guidelines because he found that the Saccucci had stated a *prima facia* case for relief under the Rhode Island Dealers' Day in Court Act, chapter 5.1 of title 31 of the Rhode Island General Laws. The order granting the temporary restraining order was entered on March 31, 2008.

The case was subsequently removed to this court on April 3, 2008. The Court conducted a Rule 16 conference on June 2, 2008 and scheduled a preliminary injunction hearing to begin on July 28, 2008. To facilitate discovery in advance of the preliminary injunction hearing, Saccucci and Honda entered into a stipulated scheduling order. Docket No. 22. That order directed the parties to submit written discovery by June 8, 2008,[1] with responses due by June 23, 2008. *Id.* The scheduling order set the dates for depositions to be conducted between June 25, 2008 and July 21, 2008. *Id.*

The parties exchanged written discovery requests on June 9, 2008. Saccucci interposed both interrogatories and requests for production on Honda. A copy of the Request for Production is attached as Exhibit 1. Honda propounded requests for production on Saccucci. Initial responses to these discovery requests were submitted by each party on June 23, 2008. Copies of Honda's written responses to Saccucci's Request for Production discovery is attached as Exhibit 2. In connection with its responses to the requests for production submitted by Saccucci, Honda produced a 13-page privilege log on June 26, 2008. A copy of the privilege log is attached as Exhibit 3.[2]

Upon review of both Honda's responses to Saccucci's Request for Production and the privilege log, Saccucci identified several areas in which it determined that Honda's

---

[1] June 8, 2008 was a Sunday, and the parties mutually agreed that June 9, 2008 was an acceptable date for the exchange of written discovery responses.

[2] The privilege log as produced by Honda did not number the withheld and redacted documents individually. Saccucci typed numbers to correspond to each individual document to the copy of the privilege log that is attached as an exhibit for ease of reference.

responses were insufficient. Accordingly, Saccucci met and conferred with Honda regarding discovery issues. It brings this motion to compel with respect to those issues on which the parties were unable to resolve their differences.

**ARGUMENT**

The responses Saccucci now seeks to compel have been withheld either on the basis of objections or incorrect assertions of privilege. The discovery provisions of the Federal Rules of Civil Procedure are designed to "make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958). Rule 26 of the Federal Rules of Civil Procedure permits parties to take discovery of all relevant information. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party). Under Rule 37, "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3). A mere recitation that a request is unduly burdensome or seeks irrelevant information is insufficient to insulate responsive documents from discovery. *See Farm Const. Servs., Inc. v. Fudge*, 831 F.2d 18, 19-20 (1st Cir. 1987) (noting that a party that declined to provide documents on the grounds that the "documents were not discoverable, were unclearly defined and that production would be unduly burdensome" was properly required to produce those documents). If a document is withheld on the basis of privilege, it is required to be identified on a privilege log with sufficient particularity such that the party requesting discovery can mount an appropriate challenge to the assertion of the privilege. Fed. R. Civ. P. Rule 26(b)(5)(A).

## I. HONDA SHOULD BE COMPELLED TO APPROPRIATELY RESPOND TO REQUEST FOR PRODUCTION NOS. 11 AND 12

Honda responded to several of Honda's document requests with objections that are unfounded and did not produce any responsive documents. For each of these requests, Honda should be compelled to either produce all responsive documents or affirmatively indicate that no responsive documents exist.

### A. Request No. 11

Document Request No. 11 seeks "all documents that evidence any request made to Honda by a dealer for advance written permission to reference the Honda Care or Acura Care program in connection with internet advertising and/or sales of Honda VSCs." Exhibit 1. Honda responded only with an objection: "In addition to its general objections, Defendants object on the grounds that the request is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence." Exhibit 2. Honda did not indicate whether any documents were withheld on the basis of this objection. *Id.*

In support of its objection to a temporary restraining order, Honda submitted an affidavit of Daniel P. Spafford, the Manager of Consumer Products and Services at American Honda Finance Corporation. In paragraph 3 of his affidavit Mr. Spafford testifies that, pursuant to the Honda Care Honda Dealer Enrollment and Participation Agreement, Honda requires its dealers to seek written permission from Honda before advertising or referencing the Honda Care or Acura Care programs online. Apparently Honda intends to argue either that Saccucci violated this provision or that this provision is among the contractual limitations on internet sales that support or justify Honda's ban on internet VSC sales. As an initial matter, Saccucci contends that it is not a party to the

version of the agreement referenced by Mr. Spafford. More importantly, Saccucci contends that Honda has waived any rights it may have to require dealers to seek written permission prior to engaging in internet promotion of Honda VSCs by virtue of its knowledge of the several dealers that for many years now have actively promoted Honda VSCs on their websites and Honda's failure to object previously to this practice.

Any requests by dealers (and responses by Honda) for written permission to advertise or promote Honda VSCs on the internet relates to both Honda's contentions as set forth in the Spafford Affidavit and Saccucci's defenses. Evidence of whether or not other dealers have requested written permission to reference Honda Care and/or Acura Care on the internet, and whether Honda has responded to such requests, is probative of the contractual requirements imposed on dealers by Honda, Honda's waiver of those requirements, and Honda's justifications for its new ban on internet VSC sales. Accordingly, Honda should be compelled to respond to the request.

Similarly, if no responsive documents exist, this fact is also relevant to and supports Saccucci's claims. Honda should be compelled to affirmatively indicate in writing if that is the case.

**B. <u>Request No. 12</u>**

Document Request No. 12 seeks "all documents that demonstrate that customers are more satisfied with their Honda VSC purchase if it is made at a brick and mortar dealership as opposed to a Honda VSC purchase made over the internet." Exhibit 1. This request was formulated in response to paragraph 8 of Mr. Spafford's affidavit, in which he avers that "dealers aggressively promoting AHM VSCs at the time that the new Honda vehicle is sold will maximize the number of AHM VSCs sold, and will also maximize the

customer's satisfaction with his or her VSC purchase[.]" Nevertheless, Honda objected to this request for production, stating that "[i]n addition to its general objections, Defendants object on the grounds that the request is vague, not reasonably calculated to lead to the discovery of admissible evidence and is intended to harass." Exhibit 2.

This case is, in part, about whether Honda had sufficient legal and factual justification for implementing a ban on all sales of Honda Care and Acura Care vehicles service contracts ("Honda VSCs") over the internet. One of the most significant facts in the case is that the price of Honda VSCs sold over the internet is significantly lower than the price set by dealers in their brick and mortar stores. Saccucci contends that the internet ban is blatantly and irrefutably anti-consumer and a transparent attempt to prevent free and fair competition for VSC sales between Honda dealers. Honda contends, in essence, that the internet sales ban was actually pro-consumer because Honda VSCs were designed to be sold in the brick and mortar setting and would maximize customer satisfaction.

In light of Mr. Spafford's testimony that clearly raises the issue of increased customer satisfaction through elimination of internet VSC sales and the underlying issues in this case, Honda's relevance objection is completely unfounded. Honda's objection on the grounds of perceived harassment is neither accurate nor a sufficient basis for withholding relevant evidence in any event. With respect to vagueness and overbreadth, Saccucci expects that Honda will withdraw its objection based on the parties "meet and confer" discussions. To the extent Honda does not withdraw the vagueness and overbreadth objections, they should be rejected by the Court based on the clear language of the request and obviously limited scope of the requested documents.

## II. HONDA HAS INAPPROPRIATELY WITHHELD AND REDACTED DOCUMENTS ON THE BASIS OF PRIVILEGE

Honda's privilege log reflects a very aggressive position on what documents are protected by the attorney client privilege or work product doctrine. For example, Honda has withheld on privilege grounds certain e-mails that were shared with a non-Honda employee and several e-mails, that although an attorney was listed as either a recipient or author, there is no indication as to why the content of the e-mail is privileged. In one instance Honda redacted a portion of an email that it was not aware had been forwarded to Saccucci. A comparison of the redacted version produced by Honda with the un-redacted version reveals that Honda's claim of privilege was inappropriate. Saccucci seeks production of the documents on the privilege log that were shared with third parties and, in light of Honda's aggressiveness in its interpretation of potentially applicable privileges and the time pressure occasioned by the truncated discovery afforded by the preliminary injunction hearing scheduling, Saccucci seeks an *in camera* review of the remaining documents identified on Honda's privilege log.

### A. Honda Waived Any Privilege That May Have Existed With Respect To E-Mails That Were Shared With Paul Shortley

Paul Shortley, a vice president of sales and business development for a company called The National System, Inc. ("NSI") was copied on several e-mails listed on Honda's privilege log. (The documents appears as numbers 6-13 on page 8, document number 13 on page 9, and document number 4 on page 10 of the privilege log).[3] NSI is an independent company that provides various marketing and advertising support services

[3] The privilege log does not identify Mr. Shortley as a recipient of the document numbered 10 on page 8 of the privilege log, but he is listed as a recipient on the document itself, which Honda indicates has been redacted. A copy of that document, Honda 000533, is attached as Exhibit 4.

to corporate clients, including Ford Motor Co., Anheuser-Bush, Domino's and Mercedes-Benz.[4] Honda contracted NSI to assist with development and enforcement of the new policy prohibiting internet sales of Honda VSCs that is the subject of this case. Neither Mr. Shortley nor any other employee of NSI was ever directly employed by Honda.

As a general rule, the privilege that attaches to communications between attorney and client is waived when the substance of the communication is disclosed to a third party. *Cavallaro v. U.S.*, 284 F.3d 236, 250 (1st Cir. 2002) ("One cannot create a privilege, where previously there was none, simply by introducing a third party (with or without a common interest) into the circle within which documents are shared."). This court has recognized that it is well-established that such disclosure waives the privilege even if the third party promises not to further disclose the substance of the communication. *U.S. v. Textron, Inc. and Subsidiaries*, 507 F. Supp.2d 138, 151 (D.R.I. 2007). *See also Walden v. City of Providence*, No. C.A. 04-304A, 2008 WL 376287, at *2 n.2 (D.R.I. Feb. 11, 2008) (The only circumstance I can surmise where Defendants' counsel would be precluded from asserting privilege is if the privilege had already been waived by disclosure to a third party and there was no good faith basis upon which to withhold the document and claim privilege."). Thus it is clear; if an otherwise privileged communication is shared with a third party, the privilege is waived and cannot be asserted as grounds for protecting a document from disclosure.

---

[4] NSI's website contains a message from its Chief Executive Officer that describes NSI's business as follows:

> Today, NSI's dedicated focus is supporting clients' national marketing activities at the local level. Our services and programs help clients partner with retailers and dealers to ensure effective, consistent, brand-enhancing advertising. We apply the latest technologies to make quality, efficient, real-time marketing information available to the right people, at the right time, in the right format.

Source: http://www.thenationalsystem.com (last visited July 16, 2008).

Mr. Shortley and NSI are entirely separate from Honda. Their inclusion on a list of recipients of a communication or a document constitutes a waiver of any otherwise applicable privileges. Plainly, there does not appear to be any basis for protecting these e-mails as privileged. Accordingly, this Court should order Honda to produce these e-mails to Saccucci.

**B. The Nature Of Some Of Honda's Assertions Of Privilege Warrants An *In Camera* Review Of ALL Withheld Documents**

Honda withheld a total of 174 documents on privilege grounds. Saccucci has reason to believe that many of the claims of privilege are improperly invoked. The previously discussed category of documents is one – albeit very clear and distinct – category of discoverable documents that should be produced, but were withheld on privilege grounds. Both the nature of the descriptions of other withheld or redacted documents on the privilege log and what Saccucci knows Honda has inappropriately asserted as privileged during discovery in this case suggest that Honda has adorned documents with the shield of privilege too liberally.

For example, the documents bearing the Bates number Honda 000412 – 000413 is an email chain originally produced by Honda in redacted form. A copy of those documents is attached as Exhibit 5. Saccucci, however, was already in possession of an unredacted copy of that e-mail chain.[5] A copy of the unredacted version already in Saccucci's possession is attached as Exhibit 6. A review of the unredacted version of the document reveals that Honda's redactions were not justified by any legitimate claim of privilege. Honda's redactions included: (1) an e-mail from the Assistant Manager of Marketing and Communications to a woman named Jennifer Symington asking "Are there

[5] At Saccucci's request and in light of the clear waiver accompanied by the forwarding of the email chain to Saccucci, Honda has subsequently agreed to produce this document in un-redacted form.

any legal issues with this dealer selling Honda Care on the web? Do you still look at each on a case-by-case basis?" (2) A portion of the response to that e-mail that reads, "I think the web name used by Saccucci (listed below) is problematic and will review it with HNA law. . . . If the dealership refuses to cooperate, we begin a legal process starting with a cease and desist letter and moving toward a lawsuit if necessary. In the case of the specific example below, I'll begin work with HNA law next week. Please be aware that it's a very slow process." (3) and subsequent e-mails in the chain that indicate that Honda believed that Saccucci was unwilling to cease using its website without a fight and that it was best to address specific issues on a case-by-case basis.

Nothing in these redacted portions reflects legal advice from an attorney in any respect. Honda appears to have simply redacted any email that mentioned lawyers or legal issues, regardless of whether or not it constituted a communication between an attorney and a client soliciting legal advice, reflected attorney mental impressions or was prepared in anticipation of litigation.

It appears likely that Honda was similarly aggressive (and unjustified) in withholding documents or information on privilege grounds in other circumstances reflected on its privilege log. Honda has labeled numerous documents privilege-protected without clear explanation, and has withheld documents entirely on the basis of privilege when, from the description of the documents on the privilege log, it appears that if the document warrants privilege protection at all, that protection should be provided with a redaction rather than the withholding of the entire document. Numerous documents on the privilege log are authored by counsel, but the subject of the documents does not describe the nature of the legal advice contained within the documents. The

mere fact that a document was created by an attorney does not cloak it with attorney client or work product privilege. *See In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003) ("The dimensions of the privilege itself are reasonably well honed. The privilege protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice."). Similarly, the mere inclusion of an attorney among the recipients of an e-mail or other communication does not cloak that communication with privilege unless the purpose of the communication was to obtain legal advice. *See id.*

Te privilege log is rife with additional examples of questionable or suspect designations, *i.e.*, document number 7 on page 3 designates handwritten notes by Spafford, a non-attorney, which were not communicated to anyone, as protected by the attorney client privilege. Similarly, document 15 on page 3 is an "[e]-mail regarding changes to the PBA program." Although attorneys were among the listed recipients of that e-mail, there is nothing in that description that reveals whether the communication was made for purposes of obtaining legal advice. *See id.* These examples are emblematic of the nature of many, if not most, of the descriptions of the documents withheld by Honda on the basis of privilege.

In light of the evidence of Honda's aggressiveness in asserting privilege, the clear impropriety of withholding e-mails shared with a third party, Mr. Shortley, for which any applicable privilege was waived, and other questionable designations by Honda, Saccucci requests an *in camera* review of all of the documents listed on Honda's privilege log. While this may be an onerous request, it is necessitated by the nature of privilege logs (*i.e.*, Saccucci's limited ability to probe the integrity of the claim of privilege) and the

exigencies of time created by the truncated preliminary injunction schedule. Saccucci simply does not have time to examine witnesses with regard to the privilege log and attempt to narrow the list of suspect documents prior to the hearing.

## CONCLUSION

For the reasons set forth herein, Saccucci respectfully requests that this court issue an order:

1) compelling Honda to provide responsive documents to Request for Production Nos. 11 and 12 or, in the alternative, to certify that no documents exist that are responsive to those requests,

2) compelling Honda to produce certain e-mails identified on its privilege log that were shared with a third party, and

3) compelling Honda to submit for *in camera* review all documents identified on its privilege log.

Dated: Providence, Rhode Island
July 15, 2008

PLAINTIFFS, SACCUCCI AUTO GROUP, INC., formerly known as SACCUCCI LINCOLN-MERCURY, INC., d/b/a/ SACCUCCI HONDA
By their attorneys,

*/s/ Adam M. Ramos*

John Tarantino, #2586
Geoffrey W. Millsom, #6483
Adam M. Ramos, #7591
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-2443
Tel: (401) 274-7200
Fax: (401) 351-4607

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Motion to Compel and memorandum of law in support thereof through the ECF system on the 20th day of June, 2008, and that notice will be sent electronically to all counsel who are registered participants identified on the Mailing Information for Case C.A. No. 08-121-S and by regular mail, postage pre-paid, to:

Michael B. Keating, Esq.
David A Kluft, Esq.
Catherine Wicker, Esq.
Foley Hoag, LLP
155 Seaport Blvd
Boston, MA 02210.

*/s/ Adam M. Ramos*

461661_1.doc