UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

SACCUCCI AUTO GROUP, INC., formerly known as SACCUCCI LINCOLN-MERCURY, INC., d/b/a SACCUCCI HONDA,

Plaintiff,

v.

AMERICAN HONDA MOTOR COMPANY, INC. and AMERICAN HONDA FINANCE CORPORATION d/b/a HONDA FINANCIAL SERVICES,

Defendants.

C.A. No. 08-121-S

**DEFENDANTS' OBJECTION TO**
**SACCUCCI AUTO GROUP, INC'S MOTION TO COMPEL**

Defendants American Honda Motor Co. Inc. and American Honda Finance Corporation hereby object to the Motion to Compel brought by Plaintiff Saccucci Auto Group, Inc. Defendants' supporting memorandum and the accompanying affidavits of David A. Kluft, Esq. and Carol J. Moore, Esq. are filed herewith.

AMERICAN HONDA MOTOR COMPANY, INC. AND AMERICAN HONDA FINANCE CORPORATION

By their attorneys,

/s/ Gordon P. Cleary
Gordon P. Cleary (No. 1948)
VETTER & WHITE
20 Washington Place
Providence, Rhode Island 02903
401-421-3060
401-272-6803(fax)

Michael B. Keating (MA. BBO #263360)
David A. Kluft (MA BBO #658970)
Catherine H. Wicker (MA BBO #664326)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000
(617) 832-7000 (fax)

Dated: August 4, 2008

CERTIFICATE OF SERVICE

To: Geoff Millsom
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-2443

I hereby certify that I served the foregoing through the ECF system on August 4, 2008, and that notice will be sent electronically to all counsel who are registered participants identified on the Mailing Information for Case C.A. No. 08-121-S and by first class mail, postage pre-paid, to non-registered parties.

/s/ Gordon P., Cleary

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SACCUCCI AUTO GROUP, INC., formerly known as SACCUCCI LINCOLN-MERCURY, INC., d/b/a SACCUCCI HONDA,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HONDA MOTOR COMPANY, INC. and AMERICAN HONDA FINANCE CORPORATION d/b/a HONDA FINANCIAL SERVICES,<br><br>Defendants. | C.A. No. 08-121-S |

**MEMORANDUM IN OPPOSITION TO**
**SACCUCCI AUTO GROUP, INC'S MOTION TO COMPEL**

Defendants American Honda Motor Co. Inc. and American Honda Finance Corporation (collectively, "Honda") oppose the Motion to Compel (the "Motion") brought by Plaintiff Saccucci Auto Group, Inc. ("Saccucci"). The Motion requests an order on four principal issues. One issue represents a good faith dispute between the parties on a point of law, namely, whether the attorney-client privilege can extend to communications to an independent contractor in certain circumstances. The remainder of the Motion involves inconsequential disputes that should have been addressed without the Court's intervention, and matters that Saccucci has raised without conferring with Honda pursuant to Fed. R. Civ. P. 37.

## BACKGROUND

This case concerns Vehicle Service Contracts ("VSCs"), an insurance product often sold by automobile dealers to automobile owners. Honda dealers sell VSC's under the brand names Honda Care and Acura Care. In response to a concern that the Honda and Acura brand images were being harmed by the internet sale of VSCs, Honda issued a policy halting the practice. Saccucci claims that said policy violates chapter 5.1 of title 31 of the Rhode Island General Laws, and that it also breaches a contract formed by Saccucci's reliance.

In compliance with a stipulated scheduling order, the parties exchanged written discovery in June, 2008. On June 30, 2008, counsel for Saccucci telephoned counsel for Honda to discuss a list of issues concerning Honda's privilege log and responses to Saccucci's document requests and interrogatories. (See Affidavit of David A. Kluft ("Kluft Aff.") at ¶2). Honda subsequently addressed the concerns raised by Saccucci by telephone and via e-mail correspondence. (See Kluft Aff. at Ex. A). These concerns included some documents pertaining to Honda consultant Paul Shortley, Document Requests ##'s 11 & 12, and a few other items on which the parties ultimately came to an agreement. Saccucci raised no discovery issues other than those addressed in this correspondence. (Kluft Aff. at ¶4). Honda finished responding to Saccucci's discovery concerns on July 16, 2008. (Kluft Aff. at ¶3). Later that day, Saccucci brought this motion without further conferring with Honda.

## ARGUMENT

Honda addresses Saccucci's points in the order in which they are raised in the Motion:

### A. Document Request #11

Saccucci's Document Request #11 seeks "all documents that evidence any request to Honda by a dealer" for permission to use its brand names in connection with internet advertising

or sales of VSCs. (Motion at Ex. 2, p. 6). Honda objected that this request was overbroad, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Not only are Honda's contractual relationships with other dealers not at issue in this case, but this request would require Honda to conduct an extensive search including approximately 1200 dealer files.[1]

Saccucci now moves to compel the production of these documents. Saccucci's rationale for this motion is as follows: Saccucci assumes that Honda intends to rely on a contractual clause which would have required Saccucci to seek written permission before it used the Honda Care brand name. Therefore, Saccucci will likely argue, it needs these documents in order show that Honda waived that contractual clause by its course of performance, i.e. by not requiring said written permission in other instances.

Saccucci is wrong as a matter of law. A waiver by course of performance is shown by reference to the relationship between the parties. Restatement (Second) of Contracts § 202 cmt. g (" . . . the conduct of the parties may be evidence of an agreed modification or of a waiver by one party") (emphasis added). See also R.I. Gen. Laws § 6A-1-303 (defining "course of performance" as "a sequence of conduct between the parties to a particular transaction . . ."); Arcade Co. v. Kentco, Inc., 592 A.2d 135, 137 (R.I. 1991) (contract terms can be varied by "the conduct of the parties") (emphasis added). Saccucci has offered no authority for the proposition that activity as to other contracts with non-parties is relevant to this analysis.

Therefore, assuming arguendo that Honda invokes the contract clause in question in this matter, Saccucci could only demonstrate a waiver of that clause by showing the course of conduct between the parties to this case. However, at no time has Saccucci offered to narrow its

[1] Because Honda does not possess a list of which dealers advertise and/or sell VSC's on-line, a diligent search would require an inquiry into files regarding all dealers.

request such as to conform to the legal doctrine it purportedly seeks to invoke. There is therefore no basis for compelling Honda to withdraw its objections to Document Request #11.

**B. Document Request #12**

Saccucci's Document Request #12 seeks "all documents that demonstrate that customers are more satisfied with their Honda VSC purchase if it is made in a brick and mortar dealership as opposed to a Honda VSC purchase made over the internet." (Motion at Ex. 2, p. 6). Honda objected to this request and informed Saccucci that it was, inter alia, vague and appeared to assume the existence of a statement that Honda did not make. (Kluft Aff. at ¶5.). Saccucci's counsel asserted that the wording of Document Request #12 was Saccucci's attempt to paraphrase the following portion of an affidavit by Dan Spafford, a Honda manager:

> AHM and AHFC believe that dealers aggressively promoting AHM VSC's at the time that the new Honda vehicle is sold will maximize the number of AHM VSCs sold, and will also maximize the customer's satisfaction with his or her VSC Purchase, because at present, for most (although certainly not all) consumers, personal one-on-one sales techniques are the most effective way of distinguishing AHM VSCs from competing vehicle service contracts.

(Id. at Ex. B, ¶8). Honda suggested rewording the request by quoting Mr. Spafford in full instead of paraphrasing him, and later suggested that Saccucci simply ask Mr. Spafford the basis for his statement at his deposition. (Kluft Aff. at ¶6).[2] However, Honda maintained that because Document Request #12 was not an accurate characterization of Mr. Spafford's statement, it would not withdraw its objection to the request "as written." (Id. at ¶6 & Ex. A). Nevertheless, Saccucci has made no attempt to rewrite or tailor its request so as to provide a basis for seeking

[2] At Mr. Spafford's deposition, which took place on July 23, 2007, Saccucci's counsel did in fact question him about the basis for the statement.

documents relating to Mr. Spafford's actual statement. (Kluft Aff. at ¶6). For this reason, there is no basis for compelling Honda to withdraw its objections to Document Request #12.[3]

**C. Communications between Honda's Counsel and Paul Shortley**

In crafting the VSC internet policy which is at issue in this case, Honda utilized the advice of inside counsel, outside counsel, and professional consultants. Paul Shortley is a consultant employed by the National System, Inc. ("NSI"), a specialist in advertising and compliance monitoring. (Affidavit of Carol Moore "Moore Aff. at ¶ 3). Mr. Shortley and NSI have been continuously engaged by Honda for approximately a decade in the area of monitoring compliance with and enforcement of Honda policies, including those related to internet advertising. (Moore Aff. at ¶ 4). For business and efficiency reasons, Honda has chosen to employ NSI as its agent in such activities rather than spend the resources to develop equivalent capacities in-house. (Moore Aff. at ¶¶ 4, 7).

Honda involved NSI in the process of developing its VSC Internet Policy. Mr. Shortley was considered as much a member of the policy development team as a Honda employee, in part because he was the person best-informed to educate other team members about operationally similar Honda policies that were administered by NSI. (Moore Aff. at ¶¶ 6, 8). Mr. Shortley helped develop the rules which were to accompany the VSC internet policy, as well as a long-term program for monitoring and enforcement which NSI was to administer indefinitely on behalf of Honda. (Moore Aff. at ¶¶ 9, 10). Because the team included attorneys whose role was to offer legal advice to Honda about the policy, and because NSI's role was to help develop and administer that same policy, it was on occasion necessary for those attorneys to share legal

---

[3] Additionally, as Honda explained to Saccucci when this issue was first discussed, the dispute is largely academic because Honda has not withheld documents responsive to the purported intent of the request.

advice with Mr. Shortley. (Moore Aff. at ¶¶ 11). The team considered these communications to be confidential. (Moore Aff. at ¶¶ 12).

Honda has produced in discovery many documents involving Mr. Shortley and NSI. (Moore Aff. at Exhs. A-F). However, approximately four documents transmitted to or from Shortley were withheld because they contained legal advice or requests for legal advice. (Moore Aff. at ¶¶ 11).[4] Saccucci's position with regard to these documents is blunt: Shortley is not a Honda employee, and therefore his participation in any communication waives the attorney-client privilege. This position is an oversimplification of the law.

In the seminal case of In Re Beiter, the U.S. Court of Appeals for the Eighth Circuit recognized that, for purposes of the attorney-client privilege, a "client's representative" could include a third-party consultant. 16 F.3d 929, 935 (8th Cir. 1994). In that case, an individual who worked closely with a party on a particular land development project for several years, and who communicated with that parties' counsel, happened to have his position defined as an independent contractor rather than as an employee. Id. at 934. The Beiter court explained that because the purpose of the privilege is to facilitate the exchange of information in order for counsel to fulfill its representation of the client, it would be "inappropriate to distinguish between those on the client's payroll and those who are instead, and for whatever reason, employed as independent contractors." Id. at 937.[5]

---

[4] Saccucci's Motion seeks to compel more than four documents. However, subsequent to Saccucci's filing its Motion to Compel, Honda produced the remainder of the requested documents for reasons unrelated to the issues discussed herein. At present, the only documents challenged by Saccucci that are still being withheld are items ## 9, 10 and 12 on page 8 of the privilege log, and item #13 on page 9 of the privilege log. (See Motion at Ex. 3). In addition, Saccucci has subpoenaed documents from NSI, and the Court's ruling on this issue will likely effect the status of some of these documents as well.

[5] The Beiter court noted that in addition analyzing whether it was possible for a third-party consultant to fall within the privilege, the Court must also consider whether the documents in

Under Beiter, consultants and contractors who are the "functional equivalent" of employees as to an aspect of a party's business are "insiders" for purposes of the attorney-client privilege. See id. at 936; quoting John E. Sexton, A Post-Upjohn Consideration of the Corporate Attorney-Client Privilege, 57 N.Y.U. L. Rev. 443, 498 (1982) (discussing individuals "who are not employees of the corporation but who are nonetheless meaningfully associated with the corporation in a way that makes it appropriate to consider them 'insiders' for the purposes of the privilege"). This analysis has subsequently been extended to a variety of third-party "insiders," including investment bankers, engineers, film crews and actuaries. See, e.g., Stafford Trading, Inc. v. Lovely, 2007 U.S. Dist. LEXIS 13062 (N.D. Ill. 2007); MLC Automotive, LLC v. Town of Southern Pines, 2007 U.S. Dist. LEXIS 2841 (M.D.N.C. 2007); Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc., 2002 U.S. Dist. Lexis 22215 (S.D.N.Y. 2002); Byrnes v. Empire Blue Cross Blue Shield, 1999 U.S. Dist. Lexis 17281 (S.D.N.Y. 1999). These cases are consistent with First Circuit precedent, which holds that the "guiding principle" is the parties' intent to maintain the confidentiality of the privilege. Kevlik v. Goldstein, 724 F.2d 844 (1st Cir. 1984); U.S. v. Bigos, 459 F.2d 639, 643 (1st Cir. 1972), *cert. denied*, 409 U.S. 847 ("while we agree that the presence of a third party commonly destroys the privilege, it does so only insofar as it is indicative of the intent of the parties that their communication not be confidential").

Saccucci has cited three cases for the opposite proposition, none of which are applicable here. One of those cases, Walden v. City of Providence, 2008 U.S. Dist. LEXIS 10084 (D. R.I. 2008), does not concern third-party consultants at all and merits no further discussion. In the

---

question are in fact privileged. In re Beiter, 16 F.3d 929, 930 (8th Cir. 1994). Here, Honda's privilege log makes a prima facie case for the privileged status of these documents. Saccucci's motion has not in fact challenged this position, but argues only that the privilege has been waived by virtue of Shortley's third-party status. Nevertheless, should the court request an *in camera* review, Honda will provide the documents in question.

second case, U.S. v. Textron, Inc., 507 F. Supp. 2d 138, 151-52 (D. R.I. 2007) the court did not hold that non-employee consultants can never come within the attorney-client privilege. Rather, that case made the specific point that one type of consultant, *independent auditors*, do not come within the attorney-client privilege because they are "responsible for reporting to the investing public." Id. Finally, the First Circuit's decision in Cavallaro v. United States, 284 F.3d 236 (1st Cir. 2002) is also unavailing. In that case, a non-employee accountant of one company attended a meeting which included the attorney of a second company. Id. at 242. The companies subsequently merged and the lawyer and accountant worked together to provide legal advice. The issue in that case was not whether the very presence of a non-employee accountant destroyed the privilege in all instances; in fact, both parties and the First Circuit agreed that it did not. Id. at 246. Rather, the issue was whether, at the time of the initial meeting, the lawyer and accountant had already begun to work in tandem to provide legal advice such that certain related documents were privileged. Id. at 247-48.[6]

Here, Mr. Shortley was a classic "insider" as described by Beiter and its progeny. Mr. Shortley was not only intimately involved in the development of the VSC internet policy, but NSI's role was envisioned as that of a long-term agent on compliance and enforcement of the policy. For that reason, it was necessary for Mr. Shortley to share in certain privileged communications. Honda considered Shortley (and NSI) to be part of the "team" for purposes of this project and, after a decade-long relationship with NSI, Honda reasonably considered its communications with him to be confidential. Honda's "economic decision to conduct its

[6] Additionally, Cavallaro v. United States, 284 F.3d 236 (1st Cir. 2002) was decided in part by reference to United States v. Kovel, 296 F.2d 918 (2d Cir. 1961). Kovel addresses whether certain consultants hired by an attorney can be analogized to a foreign language interpreter, whose presence does not waive the privilege. Id. at 921. By contrast, Beiter and its progeny address a distinct issue, to wit, the circumstances under which a non-employee hired by the client can be considered the functional equivalent of an employee. See Bieter, 16 F.3d at 929.

business through independent contractors as opposed to employees should not effect the scope of its privilege." Twentieth Century Fox Film Corp., 2002 U.S. Dist. Lexis 22215 at * 4-7. Mr. Shortley was the functional equivalent of an employee for purposes of the internet VSC policy and, as such, his participation in a communication with counsel about that policy does not waive the attorney-client privilege.

**D. Saccucci's omnibus attack on Honda's privilege log**

Rather than confining itself to the items on which the parties conferred pursuant to Rule 37, Saccucci has appended to its motion an omnibus attack on Honda's entire privilege log. Saccucci's argument is that it has presented evidence that Honda constructed its privilege log in such bad faith, and that it is so "rife with additional examples of questionable and suspect designations" (Saccucci has pointed to only two), that the Court should take the extraordinary measure of conducting an *in camera* review of every single document on the log.

As an initial matter, this request is brought in violation of Fed. R. Civ. P. 37. Saccucci provided an enumerated list of its discovery concerns, and Honda addressed them. (Kluft Aff. at Ex. A). Prior to bringing this motion, Saccucci did not express any concern regarding the propriety of the privilege log generally, it did not suggest any dissatisfaction with descriptions other than those evidenced in the parties' e-mail correspondence, it did not mention the specific items it now cites on page eleven of its Motion and it did not suggest that Honda's redactions on one document called into question its position as to other documents. (Kluft Aff. at ¶4). Honda has been responsive to all the issues that Saccucci has raised in compliance with Rule 37, and at no time did Honda give Saccucci any reason to believe that further conferences pursuant to the

rule would have been futile.[7] The Court is not required to consider the merits of the portions of Saccucci's motion brought in violation of Rule 37. See, e.g., Robinson v. Potter, 453 F.3d 990, 995 (8th Cir. 2006); Naviant Mktg. Solutions, Inc. v. Larry Tucker, Inc., 339 F.3d 180, 186 (3d Cir. 2003).

But even if the Court were to consider the merits of Saccucci's request, there would be no reason to grant it. Saccucci's argument is premised entirely on three remarkably thin reeds. First, Saccucci claims that Honda's withholding of the Shortley documents is evidence of an "aggressive (and unjustified)" posture towards privilege. However, Honda has clearly marked the documents on its log, has been transparent with Saccucci about Shortley's identity and, as the foregoing legal discussion demonstrates, has a good faith basis for its claim of privilege.

Second, Saccucci claims that two entries on page 3 of the privilege log are so suspect that they call into question the rest of the log. (Motion, Ex. 3, p. 3). However, these entries are both clearly marked as involving communications between Honda employees and Bruce Parker, Esq., an attorney at Foley Hoag LLP who provides legal advice to Honda. Saccucci is well-aware of Parker's identity, as he has appeared on behalf of Honda in the Superior Court in this very matter. These entries are clearly privileged on their face and, in any event, are hardly evidence of any improper attitude with regard to privilege.[8]

Finally, Saccucci points to a single e-mail from which Honda redacted a small portion. (See Motion, Ex. 5). After initially receiving the document in discovery, Saccucci informed Honda that it also had a copy of all or part of the same e-mail chain, in unredacted form, because

---

[7] In fact, as Ex. A demonstrates, in several instances Honda considered Saccucci's arguments and produced the documents requested. This is how Rule 37 is supposed to work.

[8] While it is true that the description of these documents on the privilege log do not explicitly use the term "legal advice," it bears repeating that Saccucci never gave Honda the opportunity to supplement these descriptions.

at some point a Honda employee had forwarded it to Saccucci. (See Motion, Ex. 6). Upon learning this, Honda agreed that any privilege with regard to the document had been waived by virtue of its being forwarded to Saccucci. (Kluft Aff. at Ex. A & ¶7). Honda has since produced an unredacted version. In the portion of the e-mail that Honda had redacted before learning of the waiver, two Honda employees discuss the potential for litigation against Saccucci with regard to its internet sales of VSCs, and formulate a request for legal advice to counsel. (Motion, Ex. 6). If it were not for the waiver, this material could have been properly withheld under the Attorney Client privilege or the Work Product Doctrine.[9]

[9] Based on only this document, Saccucci claims that "Honda appears to have simply redacted any email that mentioned lawyers or legal issues" (Motion at p. 10). This hyperbole gives a false impression of Honda's production. Honda has in fact produced numerous communications involving Honda attorneys that did not involve transmission of legal advice, as well as discussions of legal issues by non-attorneys. Saccucci is well-aware of these documents, and has already used many of them as deposition exhibits, including those bates labeled HONDA000730 (Ex. 55); HONDA000406 (Ex. 58), HONDA0001457 (Ex. 61), HONDA000305 (Ex. 62); HONDA000419 (Ex.000419); (Ex. 68); HONDAA0001390 (Ex. 72); HONDA000017 (Ex. 75) and HONDA000046 (Ex. 76).

## CONCLUSION

With regard to discovery in this matter, Honda has acted promptly, cooperatively and transparently. While there may be room for a good faith argument as to the communications involving Mr. Shortley, none of the issues raised by the far-reaching motion before the Court justify Saccucci's lack of compliance with Rule 37 or indicate evidence of bad faith on the part of Honda, and they certainly do not require that the Court conduct an *in camera* review of dozens communications between Honda and its attorneys. For the foregoing reasons, Saccucci's Motion to Compel should be denied.

Dated: August 4, 2008

AMERICAN HONDA MOTOR COMPANY, INC. AND AMERICAN HONDA FINANCE CORPORATION

By their attorneys,

/s/ Gordon P. Cleary
Gordon P. Cleary (No. 1948)
VETTER & WHITE
20 Washington Place
Providence, Rhode Island 02903
401-421-3060
401-272-6803(fax)

______________________
Michael B. Keating (MA. BBO #263360)
David A. Kluft (MA BBO #658970)
Catherine H. Wicker (MA BBO #664326)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000
(617) 832-7000 (fax)

CERTIFICATE OF SERVICE

To: Geoff Millsom
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-2443

I hereby certify that I served the foregoing through the ECF system on August 4, 2008, and that notice will be sent electronically to all counsel who are registered participants identified on the Mailing Information for Case C.A. No. 08-121-S and by first class mail, postage pre-paid, to non-registered parties.

/s/ Gordon P. Cleary